UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CHRISTOPHER PHILLIP MOSLEY, | ) | |
| | ) | Case No. 3:22-cv-120 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Debra C. Poplin |
| JAMES W. FRIAUF, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Christopher Phillip Mosley's first motion to file an amended complaint (Doc. 49). On June 27, 2023, Defendant James W. Friauf filed a response in partial opposition to the motion (Doc. 53). For the reasons that follow, Mosley's motion to amend his complaint (Doc. 49) will be **GRANTED IN PART** and **DENIED IN PART**. Because the Court grants leave for Mosley to file an amended complaint, the Court will also **DENY WITH LEAVE TO REFILE** Friauf's pending motion for summary judgment (Doc. 36).

### I.      BACKGROUND

James Friauf was, at one time, Christopher Mosley's lawyer. (Doc. 49-1, at 2.) Mosley sought Friauf's services after he had been fired from his job at Ruby Tuesday, Inc. ("Ruby Tuesday), allegedly for complaining about the sexual harassment and discrimination he had experienced while working there. (*Id.*) Finding the claim to be viable, Friauf agreed to take on Mosley's case. (*Id.*) As part of his representation, Friauf "assisted [Mosley] in pursuing his claims against Ruby Tuesday by timely and properly processing [Mosley's] administrative claim with the EEOC and upon receiving a right to sue letter, timely fil[ing] a lawsuit against Ruby

Tuesday, Inc.," in federal court.  (*Id.*)

On October 7, 2020, Ruby Tuesday filed for bankruptcy.  (*Id.* at 3.)  Though Mosley was listed in the bankruptcy statements as a general unsecured creditor, all communications related to the proceeding were mailed to Friauf at the physical address listed on the internet.  (*Id.*)  Friauf, however, claims he never received the bankruptcy notice, because he "had moved his office . . . [to] another location" at the time it was mailed.  (*Id.*)  Once Friauf became aware that Ruby Tuesday filed for bankruptcy, he informed Mosley that he would research the issue and advised him "that [he] could wait until [the] bankruptcy was concluded and/or discharged" before "proceed[ing] with litigating the [u]nderlying [c]laim or . . . [pursuing] a settlement."  (*Id.* at 4.) According to Mosley, Friauf did not disclose that he lacked experience in bankruptcy matters and instead provided "erroneous and false" advice regarding the preservation of Mosley's claim against Ruby Tuesday.  (*Id.* at 4–5.)  Absent reason to believe Friauf was not qualified to provide such advice, Mosley relied on it and waited.  (*Id.* at 4.)

On March 10, 2022, Mosley was notified that Ruby Tuesday's bankruptcy proceedings had been closed and his claims discharged.  (*Id.* at 5.)  Mosley alerted Friauf to this finding, and Friauf informed Mosley that Ruby Tuesday's counsel told him the proof-of-claim filing deadline[1] had already passed.  (*Id.* at 6.)

On April 5, 2023, Mosley filed the present action, alleging legal-malpractice claims premised on Friauf's failure to exercise reasonable care in protecting his interests as to his employment-discrimination suit against Ruby Tuesday.  (Doc. 1, at 6–8.)  On May 12, 2023, Friauf filed a summary-judgment motion.  (Doc. 36.)  A few days later, Mosley moved the Court

---

[1] Per the proposed amended complaint, Mosley would have needed to file a proof of claim in Ruby Tuesday's bankruptcy proceeding to preserve his claims against the company.  (Doc. 49-1, at 3, 8, 10.)

to extend his response deadline until after he deposed Friauf.  (Doc. 38.)  The Court granted the

motion, allowing Mosley to file his response to Friauf's summary-judgment motion within

twenty-one days of completing Friauf's deposition.  (Doc. 41, at 1.)  After taking Friauf's

deposition but before expiration of the extended response deadline, Mosley filed a motion to

amend his complaint based on newly discovered information.  (Doc. 49.)  In light of the

impending summary-judgment response deadline, this Court issued an abbreviated response

deadline to Mosley's motion to amend.  (*See* Doc. 52.)  Friauf filed a response on June 27, 2023

(Doc. 53), and Mosley filed his reply the next day (Doc. 54).  The motion (Doc. 49) is now ripe

for the Court's review.

## II.      STANDARD OF LAW

Under Federal Rule of Civil Procedure 15, if a party can no longer amend its pleading as

a matter of course, it "may amend its pleading only with the opposing party's written consent or

the court's leave."  Fed. R. Civ. P. 15(a)(2).  However, "[t]he court should freely give leave

when justice so requires."  *Id.*; *see also Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016)

("Because Rule 15(a)(2) directs courts to 'freely give leave when justice so requires,' the rule

embodies a 'liberal amendment policy.'").  Denial of leave to amend may nevertheless be

appropriate when there has been "undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of

amendment."  *Foman v. Davis,* 371 U.S. 178, 182 (1962).

"A proposed amendment is futile if the amendment could not withstand a 12(b)(6)

motion to dismiss."  *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)

(quoting *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir.1993)).  In determining whether an amendment would survive a 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the Court to infer "more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint.  *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).  This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  After sorting the factual allegations from the legal conclusions, the Court considers whether the factual allegations, if true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    ANALYSIS

Of Mosley's proposed amendments, Friauf only opposes the addition of a punitive-damages claim.  (Doc. 53, at 1–2 n.1.)  Mosley states that he "seeks to recover punitive damages from Defendant" due to his "reckless conduct, and/or . . . intentional concealment."  (Doc. 49-1, at 10.)  According to Friauf, the proposed amended complaint "contains no well-pleaded facts that would allow for the imposition of punitive damages" against him.  (*Id.* at 2.)

In Tennessee, punitive damages are appropriate only if the claimant can show, by clear and convincing evidence, that the opposing party engaged in "intentional, fraudulent, malicious,

4

or reckless conduct." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). The

Tennessee Supreme Court has described the standard for each category of conduct as follows:

> A person acts intentionally when it is the person's conscious objective or desire to
> engage in the conduct or cause the result. A person acts fraudulently when (1) the
> person intentionally misrepresents an existing, material fact or produces a false
> impression, in order to mislead another or to obtain an undue advantage, and (2)
> another is injured because of reasonable reliance upon that representation. A
> person acts maliciously when the person is motivated by ill will, hatred, or
> personal spite. A person acts recklessly when the person is aware of, but
> consciously disregards, a substantial and unjustifiable risk of such a nature that its
> disregard constitutes a gross deviation from the standard of care that an ordinary
> person would exercise under all the circumstances.

*Id.* (cleaned up). Because punitive damages serve to "punish . . . deter . . . and [] make a public

example out of" a defendant, they are only to be granted "in the most egregious cases." *Huckeby*

*v. Spangler*, 563 S.W.2d 555, 558–59 (Tenn. 1978).

In *Metcalfe v. Waters*, the Tennessee Supreme Court recognized "that punitive damages

may be awarded in a legal malpractice claim, provided the culpable conduct established in

*Hodges, supra,* i.e., intentional, fraudulent, malicious, or reckless, is proven by clear and

convincing evidence." 970 S.W.2d 448, 451–52 (Tenn. 1998). In that case, the Court agreed

that punitive damages against the attorney, who wholly failed to prosecute his client's claim,

were proper because his "repeated transgressions and callous disregard for the rights of his

clients" allowed a jury to find "at a minimum, reckless conduct." *Id.* at 452; *see id.*

(summarizing the attorney's conduct as follows: "In addition to failing to prosecute [his client's]

claim, [defendant] failed to keep them informed about the status of their lawsuit, failed to

prepare when the case was set for trial, failed to re-file the case properly after taking a nonsuit,

failed to pay the filing fee, failed to issue summons properly, failed to appear when the case was

set a second time for trial, failed to file a notice of appeal, and failed to take any actions in an

effort to preserve [his client's] right of appeal."). Courts applying *Metcalfe* have generally

declined to deem punitive-damage claims viable in the legal-malpractice context when the attorney's behavior is more aptly classified as professional negligence. *See Jessup v. Tague*, No. E2002-02058-COA-R3CV, 2004 WL 2709203, at *3 (Tenn. Ct. App. Nov. 29, 2004) (affirming with the trial court's rejection of punitive damages by noting the attorney's "fail[ure] to use the skill, prudence[,] and diligence reasonably expected of an attorney, or that he breached his fiduciary duties [] owed to [plaintiff] . . . was not as flagrant as the attorney sued in *Metcalfe*"); *see also McMurtry v. Wiseman*, No. 1:04-cv-81, 2006 WL 2375579, at *2 (W.D. Ky. Aug. 16, 2006) (describing the holding in *Metcalfe* as "permitting punitive damages in a legal malpractice case only when the conduct of the attorney amounts to more than professional negligence").

Mosley's proposed punitive-damages claim is not plausible on its face. In the proposed amended complaint, Mosley details the numerous ways in which Friauf's representation dipped below the applicable standard of care. (*See* Doc. 49-1, at 7–8.) According to Mosley, Friauf, among other lapses, failed to disclose his inexperience handling bankruptcy matters, neglected to advise Mosley as to the steps needed to timely file a proof of his claim against Ruby Tuesday, and offered erroneous bankruptcy-related advice. (*Id.*) Though these factual allegations may support a finding of professional negligence, they do not plausibly allege that Friauf intentionally, fraudulently, maliciously, or recklessly engaged in the alleged conduct. *See Metcalfe*, 970 S.W.2d at 451–52; *McMurtry*, 2006 WL 2375579, at *2. Unlike the attorney in *Metcalfe*, Friauf did not abscond from nearly all legal duties owed to his client; rather, he "assisted [Mosley] in pursuing his claims against Ruby Tuesday by timely and properly processing Plaintiff's administrative claim with the EEOC and upon receiving a right to sue letter, timely filed a lawsuit against Ruby Tuesday, Inc." (Doc. 49-1, at 2.) Ruby Tuesday filed for bankruptcy while the case was pending but Friauf "claims he had moved his office . . . [to]

another location" without updating his address listed online and thus did not receive notice of bankruptcy, which was apparently only mailed to Friauf's former address.  (*Id.* at 3.)  Once Friauf became aware that Ruby Tuesday filed for bankruptcy, he informed Mosley that he would research the issue and advised him "that [he] could wait until [the] bankruptcy was concluded and/or discharged" before "proceed[ing] with litigating the [u]nderlying [c]laim or . . . [pursuing] a settlement."  (*Id.* at 4.)  Though Friauf may have failed to update his listed mailing address and offered advice that turned out to be, per Mosley, "erroneous and false," these facts allege no more than Friauf's "fail[ure] to use the skill, prudence[,] and diligence reasonably expected of an attorney."  *Jessup*, 2004 WL 2709203, at *3.  Therefore, the Court finds that amending the operative complaint to include a punitive-damages claim would be futile.  Accordingly, Mosley's motion to amend is **DENIED IN PART** as to his proposed punitive-damages claim.

## IV.     CONCLUSION

For the aforementioned reasons, Mosley's motion to amend his complaint (Doc. 49) is **GRANTED IN PART** and **DENIED IN PART**.  Mosley is hereby **GRANTED LEAVE TO AMEND** his complaint as proposed in his motion (*id.*), with the exception of his proposed punitive-damages claim.  Because Mosley is filing an amended complaint, the Court will also **DENY WITH LEAVE TO REFILE** Friauf's pending motion for summary judgment (Doc. 36).

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**